[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Early in the morning of June 27, 2000, Cincinnati Police Officer James Davis and his partner, Officer Rowcliffe, were on patrol near the 1600 block of Walnut Street in the Over-the-Rhine area of Cincinnati. Davis, who was driving the patrol vehicle, noticed a vehicle driven by defendant-appellee Thomas Howard pull abruptly away from the curb. Officer Davis pulled up behind Howard's vehicle and he observed Howard drive partly into the intersection before stopping at a red light. While stopped at the red light, Officer Rowcliffe ran the vehicle's license plate through the police car's mobile data terminal. The report indicated that the license plate was expired. When the light turned green, Howard turned right. Officer Davis followed him in the police cruiser and signaled to Howard to stop his vehicle.
As they approached Howard's stopped vehicle and were able to more clearly read the license plate, Officers Davis and Rowcliffe realized that the license plate number Officer Rowcliffe had run through MDT was erroneous. Officer Davis approached Howard and began interviewing him. At some point, the real plate number was called into a dispatcher, and the dispatcher informed Officer Davis thirty seconds or so into the interview that the license plate was not expired and that there were not any open warrants associated with the license plate.
During the initial interview with Howard, Officer Davis noticed that the defendant's speech was slurred, he smelled of alcohol, and his eyes were very watery and bloodshot. Officer Davis asked Howard to exit the car. Officer Rowcliffe took Howard to the sidewalk to conduct the field sobriety tests. Officer Davis, who was watching out for the safety of his partner and the police vehicle, was only able to partially observe the testing. After Howard declined a breathalyzer test, the officers arrested him and charged him with driving under the influence of alcohol. The officers also charged him with violating CMC 506.54, which prohibits stopping a vehicle when vehicular or pedestrian traffic is obstructed.
Howard filed a motion to suppress, challenging the police officers' probable cause to initiate the traffic stop, as well as the officers' probable cause to arrest based upon the result of field sobriety tests. A suppression hearing was held on May 31, 2001. Officer Rowcliffe, who had terminated her employment with the city prior to the suppression hearing, did not testify at the hearing. Because Officer Rowcliffe conducted the field sobriety tests, and she was not available to testify that she strictly followed standardized procedures in administering the field sobriety tests, the trial court held that the police did not have probable cause to effectuate the arrest. Additionally, the trial court held that the erroneous information concerning the expired tag was the "major driving force" for the traffic stop, and as such, the traffic stop itself was without probable cause. Finding no probable cause to support the stop or the arrest, the trial court granted Howard's motion to suppress.
The city has appealed from the trial court's judgment, arguing in its sole assignment of error that the trial court erred in granting the motion to suppress. We agree.
When considering a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to resolve factual disputes and evaluate he credibility of witnesses.[1] If the factual findings of the trial court are supported by competent, credible evidence, this court must give deference to those findings.[2]
Questions of law are independently decided by this court without deference to the trial court's decision.[3]
A police officer's personal observation of a traffic offense may provide reasonable, articulable suspicion or even probable cause necessary under the Fourth Amendment to the United States Constitution to justify an investigative stop of a vehicle.[4] Officer Davis testified that he followed Howard after seeing him pull away quickly from the curb. Later, he saw Howard stop his vehicle well beyond the marked stop line for the red light but no traffic was impeded. While Howard's late stop may not have been a violation of CMC 506-54, the municipal obstructing traffic statute that he was cited under, it is in violation of R.C. 4511.13(C)(1). This statute provides, in relevant part, that "[v]ehicular traffic * * * facing a steady red signal alone shall stop at a clearly marked stop line."
The trial court's finding that the "major driving force" for the traffic stop was the erroneous report on the expired license plate does not negate the constitutionality of the stop based upon the de minimis
traffic violation. Based upon this violation, the police officers had an articulable reasonable suspicion or probable cause to justify the traffic stop.
Further, the state presented sufficient evidence to demonstrate probable cause to support the arrest. In determining whether the police had probable cause to arrest an individual for DUI, we consider whether at the moment of arrest, the police had sufficient information to cause a prudent person to believe that the suspect was driving under the influence.[5] Our determination is based upon the "totality" of facts and circumstances surrounding the arrest.
"In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardize testing procedures."[6] In this case, the trial court correctly excluded the results of the tests for lack of compliance because Officer Davis could not testify to strict compliance with standardized testing procedures. However, the trial court erred in holding that despite the other evidence, in the absence of field sobriety test results, the state's ability to proceed was compromised.
The facts and circumstances Officer Davis testified to beyond the results of the field sobriety tests amply support his decision to arrest Howard. He testified to observing Howard's suspicious driving, his slurred speech, his blood shot eyes, and an odor of alcohol on or about Howard's person. In light of this other evidence demonstrating probable cause, the trial court erred in granting Howard's motion to suppress.[7]
Accordingly, the assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for proceedings in accordance with law.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrant and Gorman, JJ.
[1] See State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972,982.
[2] See State v. Hill (1998), 127 Ohio App.3d 265, 268, 712 N.E.2d 791,793.
[3] Id.
[4] See Dayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 109;State v. Patton (Sept. 7, 2001), Hamilton App. No. C-000520, unreported.
[5] State v. Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952,957.
[6] Id. at paragraph one of the syllabus.
[7] Id. at 427, 732 N.E.2d 957-958.